**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THELEAH ADDISON, | Civ. No. 15–5634 (KM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Theleah Addison brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is REMANDED.

## I.   PROCEDURAL BACKGROUND

Ms. Addison seeks to reverse an ALJ's finding that she was not disabled from March 3, 2009, the alleged onset date. She applied for DIB on January 7, 2011. (R. 23)[1] Her application was denied initially and on reconsideration (R. 23, 85–87, 94–96). On August 15, 2013, ALJ Joel H. Friedman conducted an administrative hearing, at which Ms. Addison testified and was represented by counsel. (R. 39–82) ALJ Friedman also received testimony from Patircia Shashono, a vocational expert ("VE"), who concluded that Ms. Addison could

---

[1]      Pages of the administrative record (ECF no. 10) are cited as "R. __."

perform sedentary unskilled or semiskilled work in jobs that exist in significant numbers in the national economy. (R. 69–78)

On February 28, 2014, ALJ Friedman issued a decision denying Ms. Addison's DIB application. (R. 23–31). The Appeals Council denied her request for review (R. 1–6), rendering the ALJ's decision the final decision of the Commissioner.

## II.    STANDARD OF REVIEW AND REQUIRED FIVE STEP ANALYSIS

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g., Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A.  Standard of Review

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a

2

preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007) (not precedential).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.") (not precedential). It is also proper

3

to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

### B. The ALJ's Five-Step Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulations.

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

At step one, ALJ Friedman determined that Ms. Addison had engaged in substantial gainful activity in the relevant period. He nevertheless continued the analysis, stating that she was not disabled in any event. (R. 25 ¶¶ 1, 2)

At step two, the ALJ found that Ms. Addison had the following severe impairments: "degenerative disc disease; morbid obesity; obstructive sleep apnea; and asthma (20 CFR 404.1520(c))" (R. 26 ¶ 3)

At step three, the ALJ determined that Ms. Addison's impairment or combination of impairments, including asthma, did not meet or medically equal the severity of one of the listed impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (R. 16 ¶ 4)

The ALJ defined Ms. Addison's residual functional capacity (RFC) as follows:

> 5.     ... [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except she must avoid concentrated exposure to extreme cold, heat, wetness, humidity and hazards. She can never climb ladders, ropes or scaffolds, and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl.

(R. 26 ¶ 5)

At step four, the ALJ found that Ms. Addison was not capable of performing past relevant work as a cook and catering instructor. (R. 29 ¶ 6) He noted that she was a "younger person," aged 40, that she had a high school education, and was able to communicate in English. (R. 29 ¶¶ 7, 8)

At step five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a))." Acknowledging the significan limitations of Ms. Addison's RFC, and relying on the testimony of the vocational expert, the ALJ found that she could perform such occupations as order clerk (DOT # 209.567-014), with 300 jobs locally and 11,000 nationally; small hand assembler, exemplified by the position of final assembler (DOT # 713.687-018),

with 800 jobs locally and 18,000 jobs nationally. He noted also the VE's identification of a third position, that of diet clerk (DOT 245.587-010), with 600 jobs locally and 8500 nationally, which, though semiskilled, would use transferable skills from Ms. Addison's prior employment. (R. 30 ¶ 10)

The steps, taken together, led the ALJ to a finding that Ms. Addison had not been under a disability from the claimed onset date, March 3, 2009, through the date of the decision, February 28, 2014. (R. 31 ¶ 11)

## III.    ANALYSIS

This appeal is focused on two issues: (a) the step 3 finding that Ms. Addison's asthma was not equivalent to a listed condition, and (b) the step 5 finding, based on the VE's expert testimony, that Ms. Addison was capable of sedentary work. Because I remand based on step 3, I will not consider the second issue, which may be dependent upon the first.

Ms. Addison contends that at step 3, the ALJ did not sufficiently elaborate on the reasons her asthma did not medically equal a listed impairment, specifically listing 3.03. Those listed impairments are purposely set at a high level. They are impairments that would prevent an adult, regardless of age, education, or work experience, from performing any gainful activity, and hence would justify an award of benefits without further analysis. *See Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S. Ct. 885, 892 (1990).

An ALJ's step 3 determination that the applicant's impairments do not meet or equal a listed impairment is subject to review under the usual substantial-evidence standard described in Section II.A, *supra*. A district court will reverse and remand where that step 3 finding is no more than a statement of a legal conclusion, and therefore cannot be meaningfully reviewed. *Compare Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000) (remanding for further step 3 findings based on ALJ's statement, without further analysis, that applicant's musculoskeletal impairment "failed to equal the level of severity of any disabling condition contained in Appendix 1") *with*

6

*Knepp v. Apfel*, 204 F.3d 78, 87 (3d Cir. 2000) (upholding ALJ's step 3 determination where ALJ explicitly rejected medical expert's misapplication of listed impairments to his diagnosis). To meet the substantial evidence standard this finding, like others, must be the product of an explicit consideration and weighing of "all relevant, probative and available evidence." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

## A.     The ALJ's Consideration of the Asthma Evidence

The ALJ considered the claimant's self-reporting of her symptoms. These included sleep apnea that causes her to become tired and fall asleep during the day. She recounted three visits to the emergency room in 2013 for asthma and related breathing problems. She referred to difficulty in adjusting to use of a CPAP machine. (R. 27)

The ALJ considered and analyzed the medical evidence.[2] He found that Ms. Addison had gone to the emergency room on several occasions with asthma exacerbation, generally resulting in treatment and release the same day. There was evidence of two overnight stays, in April and July 2011 (although it was unclear in one case whether the diagnosis was asthma or chronic bronchitis). Use of a CPAP had improved her sleep. The doctors recommended that Ms. Addison stop smoking, advice she did not follow until 2013. (R. 28)

The ALJ noted that pulmonary or spirometric test results had been variable.[3] A May 6, 2011, test showed moderate severe restriction. After

---

[2]     The most comprehensive discussion was in connection with the determination of residual functional capacity. A reviewing court will not insist that an ALJ perform the meaningless task of reprising his analysis under each section of the decision, where the ALJ clearly had the relevant evidence in mind and considered it thoroughly in the course of the required stepwise analysis. It is always important to remember, however, that the analysis must follow the steps, and follow them in order.

[3]     "Spirometry (spy-ROM-uh-tree) is a common office test used to assess how well your lungs work by measuring how much air you inhale, how much you exhale and how quickly you exhale. Spirometry is used to diagnose asthma, chronic obstructive

emergency room treatment, a followup on June 17, 2011, revealed only mild restriction. On September 1 and October 20, 2011, results were normal. Pulmonary tests on October 27, 2011, and January 5, 2011, were normal. A visit to the emergency room a week later was followed by spirometry on February 16, 2012, which showed moderate restriction, and on March 5, 2012, which was normal. May and August 2012 tests showed moderate restriction. On February 21, 2013, spirometry revealed mild restriction. In August 2013, however, the test demonstrated moderately severe obstruction. (R. 28) The ALJ concluded that these fluctuating test results suggested that Ms. Addison was "not as limited as she testified." (R. 28)

Importantly, Ms. Addison continued to smoke through most of this period. The ALJ, as he was entitled to do, considered that behavior as evidence that Ms. Addison's breathing impairments were not as severe as claimed. (R. 28)

The ALJ considered the evidence of treating physician Alan Klukowicz, M.D. This he discounted, because Dr. Klukowicz did not deal with the smoking or the variable pulmonary test results. Nor did Dr. Klukowicz appear to be aware that the claimant had worked in the relevant period. (R. 28) The ALJ considered the opinion of Anil Sharma, M.D., another treating physician, but gave it little weight because it did not include specific limitations or cited objective evidence, and was not consistent with the medical evidence of record.

**B.    The Evidence as Applied to Listing 3.03**

Listing 3.03 provides two alternative means of finding that asthma rises to the level of a listed impairment. The first, designated "A", incorporates diagnostic criteria for chronic obstructive pulmonary disease; and the second, designated "B", is based on the seriousness and frequency of attacks:

3.03 Asthma. With:

---

pulmonary disease (COPD) and other conditions that affect breathing."
www.mayoclinic.org/tests-procedures/spirometry/basics/definition/prc-20012673.

> A. Chronic asthmatic bronchitis. Evaluate under the criteria for chronic obstructive pulmonary disease in 3.02A; or
>
> B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. Part 404, Subpart P, Appendix 1 to Subpart P, Listing 3.03 (2016).

The ALJ's step 3 analysis of asthma consisted of the following:

> The evidence fails to establish the FEV1 levels required under listing 3.02A or the number of attacks in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year as required by 3.02B.

(R. 26 ¶ 4) The ALJ clearly had the standards of the listed impairments in mind when performing his analysis. The analysis of alternative A is supported by substantial evidence.

The question remaining is whether the ALJ performed the necessary analysis to the evidence of record with respect to alternative B, the "attacks" analysis. I conclude that further findings are required.

Counsel for Ms. Addison focuses on the number of emergency room visits. These, she says, establish the requisite "attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention," occurring six times a year, with in-patient stays of 24 hours counting as two attacks. She points to eleven hospital visits beginning on February 28, 2011 and ending in mid-2012.[4]

––––––––––––––––––––

[4]    Counsel cites hospital records of eleven visits—some ER outpatient visits, some overnight—in the 2011–12 period. Unhelpfully, counsel does not define a twelve month period, identify the six or more episodes on which she relies, or analyze them closely to see that they meet the definition of an "attack."

But here is the relevant passage from counsel's brief on behalf of Ms. Addison:

9

The ALJ's decision did not set forth the *number* of attacks. This was understandable; the applicant does not seem to have drawn his particular attention to the number of ER/hospital visits in 2011–12. Thus the ALJ stated generally that Ms. Addison had gone to the emergency room, but without analysis of the number or nature of those visits. But these eleven visits, if they meet the definition of an "attack," might meet the requirement of six attacks requiring medical intervention in a twelve-month period.

It is possible that the ALJ's opinion could be upheld based not so much on the number as on the *definition* of attacks:

> C. Episodic respiratory disease. ... Attacks of asthma, episodes of bronchitis or pneumonia or hemoptysis (more than blood-streaked sputum), or respiratory failure as referred to in paragraph B of 3.03, 3.04, and 3.07, are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Hospital admissions are defined as inpatient hospitalizations for longer than 24 hours. The medical evidence must also include information documenting adherence to a prescribed regimen of treatment as well as a description of physical signs. For asthma, the medical

---

Beginning February 28, 2011 through June 2012, Ms. Addison had eleven emergency room visit and inpatient hospitalizations. On February 28, 2011, she received nebulizer treatment and Prednisone in the emergency room. (R. 309.) She was seen again in the emergency room on March 1, 2011 and March 28, 2011 for acute bronchitis and asthma. (R. 328; 346.) On April 15, 2011, Ms. Addison was kept overnight at the hospital for acute asthma exacerbation, chronic bronchitis with acute exacerbation, morbid obesity and lumbar disc herniation. (R. 379.) Six days later, Ms. Addison returned to the emergency room for shortness of breath and asthma with acute exacerbation. (R. 431.) She was admitted overnight again on June 12, 2011, February 27 and June 2012. (R. 457; 570; 799.) She required a multiple day stay at University Hospital from July 7, 2011 through July 9, 2011 for another asthma exacerbation. (R. 492.) She required emergency room treatment on February 1, 2012. (R. 556.)

(Pl. Brf. at 34–35, ECF no. 16 at 38–39)

evidence should include spirometric results obtained between attacks that document the presence of baseline airflow obstruction.

20 C.F.R. Part 404, Appendix 1 to Subpart P, Part A, 3.00 (C).

This definition, after all, sets a threshold; not every visit to a doctor or hospital necessarily translates to an attack. The necessary discussion and analysis of the alleged "attacks," however, does not appear. There are not sufficient findings for this Court to exercise its function of review.

## III.   CONCLUSION

For the reasons expressed above, the matter is reversed and remanded to the ALJ for further proceedings in which the ALJ shall make the necessary step 3 findings based on the number of hospital visits, whether each can be characterized as an "attack" under 3.00C, and so on.

Even assuming that Ms. Addison's condition rose to the level of a listed impairment at some point in 2011–12, the ALJ may wish to consider whether it responded to treatment and/or the cessation of smoking and define the eligible period accordingly.

I note also that, in light of his other conclusions, the ALJ bypassed the issue of Ms. Addison's performance of work in the relevant period. Again, it is within the ALJ's discretion to consider that on remand.

The step 5 analysis, also challenged on this appeal, might or might not be altered on remand, so I do not address it.

Dated: November 17, 2016

KEVIN MCNULTY
United States District Judge

11